**Gypsy Allen CODIANNA, Plaintiff and Appellant,**

v.

**Lawrence MORRIS, Warden of the Utah State Prison, Defendant and Respondent.**

**No. 16302.**

Supreme Court of Utah.

April 6, 1979.

Bryce K. Bryner, Price, Timothy K. Ford, Seattle, Wash., for plaintiff and appellant.

Robert B. Hansen, Atty. Gen., William W. Barrett, Craig L. Barlow, Asst. Attys. Gen., Salt Lake City, for defendant and respondent.

PER CURIAM:

On December 29, 1977, this Court affirmed the conviction of first degree murder and the sentence of death of Petitioner, Gypsy Allen Codianna. On October 2, 1978, the United States Supreme Court denied a petition for a Writ of Certiorari to review this Court's decision.

The Court now has pending before it two actions by Gypsy Allen Codianna seeking post conviction relief. The first action, Case No. 16187, is an appeal from the dismissal of a Petition for a Writ of Habeas Corpus in the Third Judicial District. This case states 16 constitutional contentions in support of the claim that the verdict and judgment should be set aside and new proceedings instituted.

The second action, Case No. 16302, entitled Petition for Post Conviction Relief, is here under our original jurisdiction to issue Extraordinary Writs pursuant to Article VIII, Section 4, of the Utah Constitution, and Section 78–2–2, Utah Code Annotated. The latter action alleges that "evidence was withheld by the prosecution [at trial] which:

"a. supported the defense position at trial that Gypsy Codianna was drunk and under the influence of drugs at the time of the offense in question, and refuted prosecution evidence that he was not;

"b. showed that one of Petitioner's co-defendants confessed his involvement in the crime shortly after it occurred, and indicated in that confession that Petitioner was not the murderer;

"c. showed that other individuals were suspected by police and may have been involved, and that one of them, Michael Salazar, had previously assaulted the victim of this crime, threatened to kill him several times, owned at least one gun of the caliber used to commit the murder, and later joked about the killing;

"d. showed that one of Petitioner's co-defendants had a motive and had threatened to kill the victim, but in Petitioner's presence only assaultive intent was expressed. See Depositions lodged with this Court December 18, 1978, in *Codianna v. Morris, supra.* This evidence was supportive of the defense case, contrary to testimony offered by the State, and generally and specifically exculpatory to the defendant. Requests for exculpatory evidence were made by defense counsel before trial, and specific requests were

made after trial when defense counsel first learned of the existence of such evidence—but on both occasions counsel for the State denied knowing of any exculpatory evidence."

The petition in Case No. 16302 was filed directly in this Court because of events that transpired subsequent to the hearing in the trial court in No. 16187. One of the allegations in that case was that the State had in its possession evidence which, if it had been available to the defense at the time of trial, might have resulted in a different outcome, both as to the verdict of guilty and the sentence of death. Petitioner's counsel had, prior to the hearing on the petition for Writ of Habeas Corpus, received some hearsay information tending to support the allegation that the State had exculpatory evidence in its possession which had not been disclosed to Petitioner. Counsel for Codianna made a direct request to the County Attorney for all such information. The letter was dated November 27, 1978. Approximately one week later the County Attorney responded that he had no such information and that Petitioner's counsel had been informed of everything in that regard that there was. The trial court on December 15, 1978, held a hearing and dismissed the petition for a Writ of Habeas Corpus on the ground that "the Petitioner's claim of newly discovered evidence is so vague and speculative as to be an issue to which the Court cannot give serious consideration at this time."[1] Under the circumstances the trial court had little other alternative in this matter. *After* that hearing and the trial court's ruling, the State, on December 18, 1978, delivered to Codianna's counsel copies of eight depositions which had been taken from various witnesses prior to trial pursuant to Section 77–45–20, Utah Code Annotated. However, the State, at the time of the delivery of the eight depositions, would not state whether any additional such evidence existed.

Without in any way indicating any view as to the correctness of Petitioner's characterizations or the materiality of these depositions, we believe that the depositions should have been submitted to defense counsel prior to the hearing on December 18, 1978, so that the trial court at that time could have held a full hearing to determine whether they in fact bore upon the issues at trial in a manner which might have changed the result either as to the verdict or the sentence. It would also have then been possible to determine whether, on the basis of sworn testimony, the prosecution had any other evidence which arguably was exculpatory.

The papers filed on behalf of Codianna in this Court leave open the possibility that

---

1. Codianna's attorney filed an affidavit in Case No. 16302 in this Court stating:

"1. He was attorney for Gypsy Allen Codianna in his trial for first degree murder in Carbon County in 1975, and in his appeal from his conviction in that case. Prior to November, 1978, I had no knowledge of any confessions made by his co-defendants or any depositions of witnesses taken by the prosecution before the trial in that matter with the exception of one. In November, 1978, I heard that counsel for one of his co-defendants, Mr. Randall Gaither, had learned of such new evidence in the possession of the prosecution. On November 27, 1978, I wrote to the County Attorney of Carbon County requesting any such exculpatory information. In reply to that request, I was told approximately a week later that no such evidence existed, and that I knew of everything in that regard there was. On December 14, 1978, I was told by Mr. Gaither that such evidence did indeed exist.

"2. Because of the contradictory information I was given in this matter I was unable to assert to the District Court on December 12, 1978—when I filed a Petition for Habeas Corpus on Mr. Codianna's behalf—that such evidence did in fact exist, or to tell the court what it was. On Dec. 18, 1978, however, I was handed copies of eight depositions by Craig Barlow and another individual from the Attorney General's office. They refused to state at that time whether any more such evidence existed. Upon examining these depositions, I found they confirmed Mr. Gaither's claims and contained evidence pointing to the guilt of other persons and supporting the defense claims of Mr. Codianna, which information was not available to me at the time of trial and would have assisted considerably in the preparation and presentation of his defense."

additional evidence may exist which has not been disclosed to Petitioner's counsel. Indeed, since the first argument before this Court in this matter, the Attorney General has located one additional deposition that has been turned over to the defense.

■ We believe that due to the gravity of the matter here involved, our duty to exercise caution to see that the rights of the accused have been fully safeguarded requires that we remand the matter to the district court for a plenary hearing on sworn testimony subject to cross-examination, and a determination of facts, as to whether there has been any withholding of material evidence from which there is any reasonable likelihood that there may have been a different result, either as to the verdict rendered, or upon the sentence imposed. *See Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).

■ It is fundamental that the State, in vigorously enforcing the laws, has a duty not only to secure appropriate convictions, but perhaps an even higher duty to see that justice is done, even if that means disclosing to defense counsel in criminal case evidence which is exculpatory. We do not mean by this to imply impropriety on the part of the prosecution in this matter; however, matters raised by the petition are of sufficient gravity that a full hearing concerning alleged prejudice arising from undisclosed evidence is the only remedy available to assure that complete justice is done.

■ In view of the fact that the evidentiary issues raised in the instant post-conviction remedy proceeding may be interrelated with issues in the issues raised in the habeas corpus proceeding (Case No. 16187) previously ruled upon by the district court and now on appeal here, it is our judgment that the interests of justice will best be served by consolidating those two proceedings and remanding to the district court for determination of all pertinent issues involved therein.